UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
07-CV-4769(JMR/FLN)

EZ Gard Industries, Inc.      )
                              )
         v.                   )           ORDER
                              )
XO Athletic Co. et al.        )

Plaintiff seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to protect its patent, U.S. Patent No. 5,339,832 ("'832 patent"), from infringement by defendant XO Athletic Co. Defendant opposes the motion. Plaintiff's motion is granted.

I. Background[1]

Plaintiff, EZ Gard Industries, Inc. ("EZ Gard"), a company headquartered in Minnesota, manufactures athletic protective gear. Its products are distributed along two primary paths: retail stores selling directly to individuals, and dealers marketing to teams, such as schools. At issue is the '832 patent, which plaintiff obtained in 1994. The '832 patent relates to a thermoplastic mouthguard with an integral shock absorbing framework. Plaintiff sells its Gel Max mouthguard under the name "Shock Doctor," as a commercial embodiment of the '832 patent.

Defendant XO Athletic Co., a New Jersey corporation, is a competitor in the athletic protection equipment market. Until very

---

[1]As this is a preliminary injunction, the Court's "findings" are based on the parties' pleadings and affidavits. Any such "facts" are not final determinations of disputed matters.

recently, its line did not include a protective mouthguard.

In April, 2007, XO Athletic hired EZ Gard's former sales manager, Paul J. Andre. In late October, 2007, EZ Gard customers heard Mr. Andre's sales pitch on behalf of XO Athletic at a trade show. During that presentation, these customers learned for the first time that XO Athletic was marketing a mouthguard. On October 31, 2007, an EZ Gard customer forwarded to EZ Gard a marketing email he had received from Mr. Andre containing specifications for XO Athletic's mouthguard. EZ Gard was contacted by another customer about the same time who had recently attended a trade show intending to purchase 600 EZ Gard mouthguards. He placed an order with XO Athletic instead, after hearing Mr. Andre's presentation and receiving a substantial discount.

On December 5, 2007, plaintiff filed this action alleging defendant's mouthguard infringes the '832 patent, and Mr. Andre's employment with XO Athletic violated his non-compete agreement with plaintiff. Plaintiff contends Mr. Andre shared confidential information with defendant, enabling it to copy plaintiff's Gel Max mouthguard. Apparently, in response to plaintiff's motion for a temporary restraining order to enforce the non-compete agreement, defendant suspended Mr. Andre's employment until its expiration. Defendant also redesigned its mouthguard, admittedly in an effort to avoid infringement.

Plaintiff claims both defendant's original and its

redesigned mouthguards infringe the '832 patent.  Plaintiff seeks a preliminary injunction to prevent defendant from marketing and selling either rendition pending final resolution of this matter.

Plaintiff's motion for preliminary relief hinges on its claim that defendant's mouthguards infringe claims 2, 7, and 8 of the '832 patent.  Claim 2 reads:

> A composite mouthguard for a user having an upper jaw with anterior teeth, posterior teeth with occlusal surfaces, and fossae with cartilage forming sockets, and a moveable lower jaw with anterior teeth, posterior teeth with occlusal surfaces and condyles movably fitted within the sockets forming the temporomandibular joints through which the auriculo-temporalis nerves and supra-temporal arteries pass, the mouthguard comprising:
>
>> (a) a flexible and tough mouthguard portion made of a first material of a softenable thermoplastic having a U-shaped base with top and bottom sides with upward inner lingual and outer labial walls and further having posterior and anterior portions; and
>>
>> (b) a shock absorbing and attenuating framework made of a second material of a nonsoftening, resilient, low compression elastomer which is embedded in the mouthguard posterior portions of the mouthguard base comprised of a posterior cushion pad in each posterior portion each with enlarged portions in an area of a molar tooth and a bicuspid tooth to absorb, attenuate and dissipate shock forces exerted on the mouthguard during athletic activity.

Claim 7 reads:

> The composite mouthguard of claim 2, wherein the mouthguard portion first material is made from a thermoplastic comprised of copolymers of ethylene or vinyl acetate.

Claim 8 reads:

> The composite mouthguard of claim 2, wherein the framework second material is made from an elastomeric material of a group comprising thermoplastic rubber or vulcanized rubber.

In support of its claim of infringement, plaintiff offers the analysis of Dr. Arthur Erdman, Professor of Mechanical Engineering at the University of Minnesota. Defendant acknowledges Dr. Erdman as one of ordinary skill in the art, and does not challenge his expertise. Dr. Erdman opines that both of defendant's mouthguards infringe the '832 patent.

## II. Analysis

A patent owner is entitled to exclude others from making, selling, or offering to sell a patented invention for the term of the patent. See 35 U.S.C. § 271. The patent statute authorizes issuance of a preliminary injunction to protect this right. 35 U.S.C. § 283. When considering a request for a preliminary injunction, a court balances four factors: (1) the likelihood of success of the merits; (2) the threat of irreparable harm to the plaintiff if no injunction issues; (3) the balance between that harm and any injury the injunction would inflict on defendant; and (4) whether the injunction will serve the public interest. Bio-Technology General Corp. v. Genentech, Inc., 80 F.3d 1553, 1558 (Fed. Cir. 1996).

### A. Success on the Merits

A plaintiff who claims patent infringement must show both that its patent is valid and infringed. Amazon.com, Inc. v.

Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). Here, defendant does not dispute the validity of plaintiff's patent. As such, the Court need only preliminarily determine whether defendant's mouthguards infringe the '832 patent.

Infringement analysis is a two-step process. First, the Court must interpret or construe the patent's claims as a matter of law. Second, the defined claims are compared to the accused product. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996).

### 1. Claim Construction

The words of the patent claim define the invention, and thus are the central focus. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). In construing a patent, claim terms are given the ordinary and customary meaning which one with ordinary skill in the art would give them. Id. at 1313. A court is permitted to look to multiple sources in construing patent claims, affording them differing weights depending on the source. Id. at 314. Greater weight is given to intrinsic, rather than extrinsic evidence. Id. at 1317. A patent's specification is the best guide to determining the meaning of a disputed term. Id. at 1315-16. "Like the specification, the prosecution history provides evidence of how the PTO [Patent and Trademark Office] and the inventor understood the patent." Id. at 1317. Extrinsic evidence is less reliable, but may assist a court in determining how a person of

ordinary skill in the art would interpret the terms. Id. at 1318-19.

Most of the '832 patent terms are not in dispute; at this preliminary stage, the parties dispute the meaning of only two terms. The Court addresses each in turn.

### a. The Claim Term "Embedded"

Claim 2 uses the term "embedded" when it recites "a shock absorbing and attenuating framework made of a second material of a nonsoftening, resilient, low compression elastomer which is embedded in the mouthguard posterior portions of the mouthguard base." Defendant argues that "embedded" means "substantially internal," pointing to column 4, lines 11-15, of the specification which reads, "Mouthguard is comprised of a thermoplastic mouthguard portion . . . with the embedded or substantially internal elastomeric framework forming posterior cushion pads and an anterior impact brace."

As an initial matter, plaintiff argues that "embedded" is commonly understood and need not be construed as a term of art in the patent. Second, plaintiff contends defendant's proposed construction is inconsistent with another part of the specification, namely column 5, lines 44-48, which states, "the copolymer mouthguard portion at least partially surrounds the anterior cushion pads to further embed the framework in the anterior portion of the mouthguard portion." It amplifies this

argument by reference to Dr. Erdman's expert testimony and the common dictionary definitions found in Merriam-Webster's Collegiate Dictionary, Tenth Edition, 1993, and American Heritage College Dictionary, Third Edition, 1993, to show "embedded" means "an integral part of."

The Court agrees the claim term "embedded" does not require that the mouthguard's protective framework be substantially internal, but merely that it be made "an integral part" of the mouthguard. Defendant's definition is tantamount to claiming the framework must be inlaid, a construction the Court rejects. The Court finds "embedded" as a claim term is facially clear, and means only that the protective framework be integrally incorporated into the mouthguard's softer, more malleable portion.

### b. The Claim Term "Enlarged Portions"

Claim 2 calls for a mouthguard with "enlarged portions in an area of a molar tooth and a bicuspid tooth." Defendant asks the Court to interpret this phrase to mean "larger parts of the framework that protrude in both vertical directions from the framework at areas of the framework that will engage the molar and bicuspid teeth." Again, plaintiff argues that the plain meaning is controlling, and opposes adding any limiting language. Having analyzed the claim language, the Court construes the term "enlarged portions" to mean "a spatial enlargement from the linear plane of the framework."

The larger parts in question act to anchor the mouthguard in a position which allows the protective framework to protect the teeth. Defendant asks the Court to read into the claim a requirement that "larger parts" must be of increased thickness. A review of the claims and specification makes clear there is no such requirement. The Court finds its claim definition describes the claimed invention in accord with the plain meaning of the claim's words.

### 2. Infringement Analysis

A claim is infringed when an accused product is shown to embody each element of a claim. See Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999). Literal infringement occurs when each limitation of the claim is present in the accused product. North Am. Vaccine, Inc. v. Am. Cyanamid Co., 7 F.3d 1571, 1574 (Fed. Cir. 1993).

The Court finds, for the purposes of this preliminary injunction, a substantial likelihood that both the original design and the redesign of defendant's mouthguard literally infringe the '832 patent. The harder framework portion of the mouthguard is embedded within the softer form-fitting portion; the two materials are fused, making each an integral part of the other. There are spatial enlargements along the linear plane of the framework where the molar teeth and bicuspid teeth are positioned. Defendant makes much of the fact that its mouthguard is of uniform thickness. This

fact proves nothing. There are bulges below the surface of the mouthguard which enlarge its shape in a fashion which engages the molar and bicuspid teeth. These enlarged portions protrude below the linear plane of the framework.

Defendant does not dispute that the other elements of claim 2 are met. Thus, it is highly likely that the mouthguard literally infringes claim 2.

Defendant argues that certain elements of claims 1 and 9 are not met, particularly that the harder framework make contact with the teeth. Whether the mouthguards infringe claims 1 and 9 is irrelevant when considering the preliminary nature of the relief sought. An infringing product, such as defendant's mouthguards, infringes the patent even if it embodies the elements of only a single claim. See Johnson Worldwide, 175 F.3d at 988.

B. Irreparable Harm

The injunctive relief provided by the patent statute is designed to "preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money." Hybritech Inc. v. Abbott Labs, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Plaintiff must show irreparable injury is likely absent an injunction. See Torpso Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 881 (D. Minn. 2007) (rejecting Federal Circuit's presumption of irreparable harm in light of Supreme Court's holding in eBay, Inc. v. MercExchange,

L.L.C., 547 U.S. 388 (2006) that traditional principles of equity apply in patent cases).

Plaintiff claims it will be irreparably harmed if defendant is permitted to sell its mouthguard.  Defendant's product competes directly with plaintiff's line of mouthguards.  Plaintiff has already lost at least one sale to defendant.  Lost sales, particularly sales lost to an infringing product, cannot be remedied by dollar damages alone.  They are likely to have an irreparable effect on plaintiff's pricing structure and market share.  See Johns Hopkins Univ. v. Datascope Corp., 513 F. Supp. 2d 578, 586 (D. Md. 2007).  Plaintiff also notes defendant's marketing to a second EZ Gard customer, touting its mouthguard as a superior product, thus impairing plaintiff's goodwill and reputation.  The Court finds plaintiff will likely suffer irreparable harm absent an injunction.

    C.   Balance of Hardships

The Court also considers whether the harm to defendant if an injunction issues would be greater than the harm to plaintiff if it does not.  Hybritech, 849 F.2d at 1457.  Defendant asks the Court to consider the harm which will inhere from a prohibition barring it from delivering a product already introduced to customers.  It further claims an injunction will undermine the substantial investment it has made in the development and marketing of its mouthguard.  The Court finds these concerns to be hollow.

Were the Court to credit them, it would turn equity on its head.  First, the Court notes defendant's entry into this market falls hard on the heels of its hiring Paul Andre, EZ Gard's former sales manager, in violation of his non-compete agreement.  This act, while not directly related to the patent infringement claim, suggests that XO Athletic's marketing program was wrongly placed from the beginning.  Second, the Court preliminarily finds a high probability that defendant knew it was marketing an infringing product.  Once notified by plaintiff of a possible infringement, defendant withdrew its original product and substituted the second product.  This suggests two things:  either defendant did not know its first product was subject to a patent or infringed it, or it did know it was infringing, but thought it would not be discovered.  In either event, it withdrew the first product (which it displayed and used to make its improper sales), and substituted the redesigned product, which the Court finds likely infringes.

As for the cost defendant has expended to set up manufacture of its infringing product, its argument is hollow, indeed.  If one could be insulated from the consequences of infringement by expending a lot of money to produce the infringing device, the patent process would grind to a halt; infringing products, if expensively made, could flood the market with impunity.  The fact that it costs money to produce infringing goods is not a reason to allow them to be made and sold.  This argument is rejected; it is

nothing more than a frontal attack on 35 U.S.C. § 283, the section of the Patent Act which allows for a preliminary injunction.

    D.  <u>Public Interest</u>

Public policy favors protection of a valid patent. <u>See</u> <u>Smith Int'l, Inc. v. Hughes Tool Co.</u>, 718 F.2d 1573, 1581 (Fed. Cir. 1983). The United States Constitution is the ultimate expression of this Nation's public interest; Article 1, Section 8, assures that useful inventions may be protected. The Court finds the showing of infringement here is strong. Thus, it is in the public's interest to grant the injunction.

III.  <u>Bond</u>

Fed. R. Civ. P. 65(c) requires that the Court consider a bond when issuing a preliminary injunction. Plaintiff, unsurprisingly, seeks either no bond, or one of very small size. Defendant, equally unsurprisingly, asks for one monumental in scale.

The Court considers that defendant has sold athletic equipment for some time and has never had a protective mouthguard among its wares. Its only foray into this market has been accompanied by the problematic employment of plaintiff's former sales manager, in contravention of his non-compete agreement. And the only products it has offered in the protective mouthguard market have been infringing. At least on a preliminary basis, the Court sees no instance of a single sale of a non-infringing product. Under these circumstances, its claims of lost sales or injury to its reputation

cannot be afforded a great deal of weight.

With all of these considerations in mind, the Court finds it appropriate to require that plaintiff post a bond in the penal sum of $50,000, to secure the defendant against injury on a preliminary basis.

IV. Conclusion

Having balanced the factors relating to the issuance of preliminary relief, the Court grants plaintiff's motion for a preliminary injunction [Docket No. 32].

Accordingly, IT IS ORDERED that:

1. Defendant XO Athletic Co., including its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, is enjoined from making, using, offering to sell, or selling mouthguards which infringe the claims of the '832 patent, including mouthguards no more than colorably different from those disclosed by plaintiff in this litigation, pending final judgment.  Defendant is specifically enjoined from demonstrating, taking orders, distributing literature about, or discussing the accused devices with any current or potential customer.

2. This injunction will be effective upon plaintiff placing a $50,000 cash or surety bond with the Clerk of this Court, in accordance with Fed. R. Civ. P. 65(c).

Dated:  April 23rd, 2008

                                           s/ James M. Rosenbaum
                                          JAMES M. ROSENBAUM
                                          United States Chief District Judge